HALL, Judge.
Mrs. Barbara Weaver brought this suit for damages for assault and battery against Robert Hanks, d/b/a Bob’s Dutch Boy Donut Shop, his insurer, Hartford Insurance Group, and two of his employees, viz Mrs. Linda McRee and Mrs. Elaine Edwards. Plaintiff prosecutes this appeal from an adverse judgment dismissing her suit as to all defendants.
The suit grows out of a scuffle between plaintiff and Elaine Edwards, one of the defendants. Elaine Edwards is the daughter of Mrs. Linda McRee, another of the defendants.
On August 20, 1965 defendant, Mrs. Linda McRee was employed at Bob’s Dutch Boy Donut Shop, a small sandwich shop located at 2000 Lafayette Street in Gretna. The shop contains one small window through which orders are placed and filled. Defendant, Mrs. Elaine Edwards, had accompanied her mother to work that night to aid her in cleaning out the ice cream machinery at the shop. Mrs. Edwards was paid $2.00 for this work having received permission from Bob Hanks, manager of the shop, to help her mother out that night. Mrs. Edwards brought her baby with her and was accompanied by her sister-in-law, Miss Held, a teen-age girl.
On the night of the altercation plaintiff went to the shop to order roast beef sandwiches. The order was taken by Mrs. McRee who prepared four hamburgers instead of the roast beef sandwiches which plaintiff insisted she ordered.
Mrs. McRee prepared four hamburgers, placed them in a paper bag and gave them *827 to Mrs. Weaver who paid for them and left. Upon arriving home Mrs. Weaver discovered that she did not have roast beef sandwiches but hamburgers instead, which she did not want as her husband did not eat hamburgers.
Mr. Weaver took the sandwiches back to the shop but was informed by Mrs. McRee and Mrs. Edwards that they could not take the order back since the sandwiches had been taken out of the shop. Mrs. Edwards testified that her mother told Mr. Weaver that the manager could handle the problem for him. Mr. Weaver left angry and went back' home. Upon arriving home he told his wife what had occurred whereupon she had him drive her back to the shop to settle the matter.
Mrs. Weaver went to the window of the shop and informed Mrs. McRee and Mrs. Edwards that her order had not been correctly filled. Mrs. McRee told plaintiff she could not take the hamburgers back because the health laws forbid her to take food back that had left the shop. Mrs. McRee testified that she apologized to Mrs. Weaver but told her that the manager was the only one who had the authority to do anything about the sandwich mix-up. Whether Mrs. Weaver wanted the correct order or her money back is in dispute.
Mrs. Edwards testified that when her mother told Mrs. Weaver that she could not take the sandwiches back, Mrs. Weaver cursed her and called her an obscene name. Mrs. Edwards replied with some obscene language directed at Mrs. Weaver. About this time Mr. Matherne, a disinterested party, came up to the window to place an order. He testified that he heard Mrs. Edwards cursing Mrs. Weaver but did not hear Mrs. Weaver curse her back. Mr. Matherne testified that he heard Mrs. Edwards threaten Mrs. Weaver and he heard Mrs. Weaver ask the defendants to call the manager but Mrs. Edwards refused to do so. All of this is denied by Mrs. Edwards and Mrs. McRee. Mr. Matherne did not hear what Mrs. Weaver had said before he came up to the window and he left after Mrs. Weaver went to her car. Mr. Math-erne did not see any part of the subsequent fight.
Mrs. Weaver testified that when Mrs. McRee and her daughter refused to take back her order she asked them to please call the manager, but instead of calling the manager Mrs. Edwards cursed her again. Plaintiff testified that she also requested Mrs. McRee and Mrs. Edwards to call the police. When they refused to call the manager or the police plaintiff left.
Mrs. McRee and Mrs. Edwards denied Mrs. Weaver asked them to call the police. They did not call either the police or the manager.
Since there are two contrary versions of what transpired thereafter it is necessary to discuss each party’s version thereof.
Mrs. McRee was locking up the shop preparing to leave for the night when the fight between Mrs. Weaver and Mrs. Edwards began.
Plaintiff’s version of the assault is as follows:
After Mrs. McRee and Mrs. Edwards refused to exchange the hamburgers she returned to her car where her husband was waiting for her. She told her husband to go next door and call the police. Mr. Weaver testified he went into the bar next door where he met an off duty police officer who called the Gretna police for him. However in his deposition, made part of the record, Mr. Weaver stated he himself called the police. Mr. Weaver came out of the bar and returned to his car and waited with his wife for the police to arrive. However the record reveals that the police received no complaint from anyone near the area of the sandwich shop that night.
Mrs. Weaver testified that about ten minutes after Mr. Weaver returned to the car Mrs. McRee began locking up the place preparing to leave for the night. She stated that she got out of her car and walked toward Mrs. McRee and Mrs. Edwards and said “Ladies, wait a minute, don’t leave, *828 I’ve called the police.” Thereupon Mrs. Edwards called her an obscene name and threw herself on top of her. There was a scuffle between the two women on the ground. Mr. Weaver then pulled both Mrs. McRee and Mrs. Edwards off his wife and they ran to their car and drove off.
Mr. Weaver testified at the trial that the only thing he saw was that Mrs. Edwards ran at his wife and threw her on the ground. However in his discovery deposition Mr. Weaver said “When I looked up, they had her down on the ground.” Mrs. Weaver and her husband drove home and called the police. The police did have a record of this call and a unit was dispatched to the Weaver home. The following day Mrs. Weaver saw a doctor who diagnosed her injuries as bruises around the left eye and lower lip.
Mrs. Edwards’ version of the incident is as follows:
Upon closing up the shop she and her mother began walking toward their car which was parked near the shop in the opposite direction from the Weaver car. They, according to their testimony, did not know that the Weavers were still outside. Mrs. Edwards was carrying her baby and was about to put her in the car when she saw Mrs. Weaver about four feet away. Mrs. Edwards testified that Mrs. Weaver “cussed her” and ‘then I slapped her face.” Mrs. Edwards testified that she gave her baby to her sister-in-law and that Mrs. Weaver slapped her back.
Mrs. Edwards testified that Mrs. Weaver grabbed her left hand. (It should be noted that Mrs. Edwards left hand has only one finger remaining as the result of a shot gun accident necessitating the amputation of the other fingers. The remaining finger still has a surgical pin in it and it appears to pain her when grabbed.) Evidently Mrs. Weaver grabbed this finger and caused the pin to pop out which occasioned considerable pain. Mrs. Edwards testified that she went down on the ground and Mrs. Weaver jumped on her and grabbed her head and clutched it between her arm and breast. Mrs. Edwards returned Mrs. Weaver’s punches and cursed her as they fought. Mrs. McRee pulled her daughter off Mrs. Weaver and they left and went home.
Mrs. McRee testified that as she was locking up the shop her daughter and Mrs. Weaver were already fighting. She shouted to them to stop and the next thing she knew she was slapped in the face and her hearing aid came off of her head and somebody caught her hands. She said “it was a man.”
Miss Held, the sister-in-law of Mrs. Edwards, testified that Mrs. Edwards was carrying her baby when they left the shop. (Mrs. Weaver insisted that Miss Held was carrying the baby.) She testified she saw Mrs. Weaver slap Mrs. McRee and she also heard her use vulgar language.
All testimony relating to Mrs. McRee’s part in the scuffle was, on objection, excluded by the Trial Judge on the ground that plaintiff’s petition contains no allegations with respect to her participation therein. We find no error in such ruling. See Norvell v. Aiavolasiti, La.App., 33 So.2d 434.
In his written “Reasons for Judgment” the Trial Judge said:
“With regard to the case against defendant, Edwards, suffice it to say that the testimony is conflicting and the evidence tends to show that plaintiff, by her actions, contributed to the melee, particularly in returning and waiting for defendant Edwards to leave the building and confronting her in what could be recognized as a menacing attitude under all the circumstances.”
Plaintiff remained outside the sandwich shop with her husband for at least ten to fifteen minutes after she was told that the sandwiches could not be exchanged. She was aware of the unfriendly attitude of Mrs. Edwards as evidenced by *829 the cursing previously exchanged between them. Whether Mr. Weaver had called the police before the fight is in dispute but apparently Mrs. Weaver was under the impression that he had and it was her intention to detain Mrs. Edwards and her mother until help arrived. The Trial Judge apparently was not impressed by plaintiff’s version that Mrs. Edwards suddenly leaped on her from about 10 feet away and threw her to the ground and beat her.. We find it hard to believe that a woman, carrying a baby in her arms in addition to having a bad hand, would attempt such a thing. We are of the opinion that plaintiff provoked the fight by cursing Mrs. Edwards thereby justifying the slap administered by Mrs. Edwards. Under the circumstances plaintiff cannot recover against Mrs. Edwards. See Oubre v. Judice, La.App., 147 So.2d 745 and cases there cited.
In view of the above there is no necessity to discuss the vicarious liability of Mrs. Edwards’ employer, Robert Hanks, d/b/a Bob’s Dutch Boy Donut Shop.
For the foregoing reasons the judgment appealed from is affirmed; costs of this appeal to be borne by plaintiff-appellant.
Affirmed.